# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

FILED
AUG 20 2026
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY BG DEP CLK

United States of America
v.

JOHN Charles SEELEY

*Defendant(s)*

Case No. 7:26-mj-1286RJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 17, 2026 through August 18, 2026 in the county of New Hanover in the Eastern District of North Carolina, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 U.S.C. 875 (c) | Interstate Communications with a Threat to Kidnap or Injure |

This criminal complaint is based on these facts:

See attached

■ Continued on the attached sheet.

KKucala
*Complainant's signature*

Kelly Kucala, FBI SA
*Printed name and title*

Attested to by the complainant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means).*

Date: August 20 2026

*Judge's signature*

City and state: Wilmington NC

Robert B. Jones, Jr. United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kelly Kucala, having been duly sworn, hereby depose and state:

## BACKGROUND

1. I, Kelly Kucala, have been employed as a special agent of the Federal Bureau of Investigation (FBI) since January 17, 2021, and am currently assigned to FBI's Charlotte Division, Wilmington Resident Agency. I have received training, and I have experience in federal law enforcement investigations, including investigations into suspected violent crimes, narcotics, human trafficking, and violent crimes against children. I have participated in the execution of search and arrest warrants. As a federal law enforcement officer, I am charged with the duty of investigating violations of United States Code and collecting evidence in matters in which the United States is or may be a party of interest. I am charged with investigating a range of crimes, including offenses related to violent crimes, sex trafficking, child sexual abuse, and narcotics. Specifically pertaining to violent crimes, I have gained expertise through training, discussions with other law enforcement officers, and working cases.

2. Thus, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). That is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, violations of federal law.

3. This affidavit is submitted in support of a criminal complaint charging that, on or about Monday, August 17, 2026, into Tuesday, August 18, 2026, in the Eastern District of North Carolina, John SEELEY (SEELEY) violated 18 U.S.C. § 875(c), interstate communications with a threat to kidnap or injure. SEELEY violated



AF

18 U.S.C. § 875(c), by using acellular telephone to communicate threats towards employees of Avelo Airlines in Houston, Texas.

4. The statements contained in this affidavit are based upon my personal knowledge; information provided by other individuals, including other law enforcement officials; and my review of records obtained during the course of this investigation. I have not included in this affidavit each and every fact and circumstance known to me, but only the facts and circumstances sufficient to establish probable cause.

## PROBABLE CAUSE

5. On August 18, 2026, Avelo Airlines' Head of Security contacted the FBI to report threatening communications made by SEELEY. Security stated that on August 17, 2026, at approximately 11:15 p.m. Easten Standard Time (EST), SEELEY called Avelo Airlines from telephone number 631-885-1532. The call was routed to an Avelo Airlines representative in Maryland. SEELEY remained on hold until 11:30 pm EST. During the call with the airline's representative, SEELEY made threats toward Avelo Airlines employees and the company's headquarters in Houston, Texas. The call ended on August 18, 2026, at approximately 12:11 am EST.

6. On August 19, 2026, the matter was assigned to the FBI Wilmington Resident Agency. Agents obtained a copy of the recorded call from Avelo Airlines, which lasted approximately 40 minutes and 41 seconds.

7. During the call, SEELEY stated he booked two airline tickets through Avelo approximately one year prior and opted to purchase Avelo's insurance coverage.

One ticket was for himself and the other for his then-girlfriend, "Amber." He explained the tickets were intended for travel to an airport near a cruise port. Each ticket cost $183. SEELEY provided his confirmation number as XR2H4Y.

8. During the call, SEELEY said he canceled the reservation due to issues with his girlfriend. Upon filing an insurance claim, he learned he could only receive a credit for the ticket issued in his own name; the ticket purchased for his girlfriend could only be credited to her. Avelo issued SEELEY a $183 credit that expires on September 1, 2026.

9. SEELEY expressed dissatisfaction with Avelo Airlines because, after his cancellation, Avelo discontinued service to destinations previously offered out of Wilmington International Airport, limiting his ability to use the credit. SEELEY was interested in flights to Charleston, South Carolina; Long Island, New York; Miami, Florida; or Orlando, Florida. The representative informed him that none of these destinations were available from Wilmington International Airport or nearby airports.

10. SEELEY stated he had monitored available flights for six months and asked that Avelo extend his voucher in case new destinations became available. The representative advised that vouchers could not be extended for customers who voluntarily canceled their flights. SEELEY also asked whether the voucher could be transferred to his son but noted he had previously been told vouchers were non-transferable.



AF

11. SEELEY said he was aware of other customers filing lawsuits against Avelo Airlines for similar complaints. He voiced dissatisfaction with Avelo's insurance policy, describing it as a "scam" and alleging the company was "stealing" millions from customers and putting the money in their "pockets."

12. At approximately 28 minutes into the call, SEELEY stated, "Do you understand the situation right now? Wouldn't you get really angry and feel like you've been totally screwed because when you booked the flight you still had three to four options to make up for it. And now, you just pulled the rug out from me. Wouldn't you be angry?" The airline representative advised SEELEY to email his concerns to the company. SEELEY responded that he had already done so but did not receive a reply.

13. At approximately 38 minutes into the call SEELEY stated, "I'm going to ask you one last question. In what state is the main corporate headquarters for Avelo Airlines?" The representative informed him the cooperate headquarters for Avelo Airlines was in Houston, Texas. SEELEY inquired if Avelo Airlines had an airport that flew to Houston, Texas. The representative informed SEELY that New Haven was the only airport with a flight to Houston, Texas. In response, SEELEY stated, "Awesome, so I will drive a 12-hour trip. I will go to New Haven, Connecticut, and I'll book a flight going to Houston, Texas. And I will walk into your cooperate headquarters and I'll blow everyone the fucking away. I'll fucking blow, shoot everybody, working my way up to your fucking headquarters, and take everybody out. How about that? Is that a good idea?" The airline representative responded, "That's quite inappropriate." SEELEY replied, "Well it is inappropriate, but thing is your

screwing me, I am taking people out. Because I'm representing millions of people you screwed over. I'm going to make the papers, and I'll go a lifetime in jail or anything or even the death penalty. But just like the person who took out the CEO of the healthcare thing, I can go there and I can make a statement, and everyone will be thanking me that you screwed over. How about I do that? Is that good?" Then SEELEY asked the representative, "You have a flight I can book from New Haven, Connecticut, to Houston, Texas? I'll book it right now."

14. Following SEELEY's threats, the representative informed him that the call would be disconnected. The representative terminated the call while SEELEY was asking, "Are you located…" Throughout the call, SEELEY sounded calm and did not raise his voice.

15. Avelo Airlines provided FBI with his reservation. The reservation was located using the confirmation number given by SEELEY on the call. The reservation was for two tickets for SEELEY and a female with the first name of Amber. The phone number associated with the reservation is the same number SEELEY used to make the call August 17, 2026.

16. Database checks showed that SEELEY resides in Wilmington, North Carolina, at 5034 Hunt Club Road, Apartment 12. On August 19, 2026, FBI conducted surveillance in the area of the apartment and observed SEELEY's 2008 Honda Accord LX, with North Carolina plates TDY-9120 parked in the community.

17. August 19, 2026, FBI spoke with management for the apartment complex where SEELEY resided and learned that he lived in a back maintenance



AF

building. He used the address, 5034 Hunt Club Road, Apartment 12, Wilmington, NC, which was the unoccupied model unit for a physical address since the maintenance building was not a listed unit for the apartment complex.

18. On August 19, 2026, FBI arrested SEELEY for interstate communications with a threat to kidnap or injure towards Avelo Airlines' employees. SEELEY was taken into custody without incident. He was transported to the New Hanover County Sheriff's Office and read his Miranda Rights. SEELEY read the consent portion out loud, waived his rights, and agreed to speak to officers without a lawyer present. The interview was audio and video recorded.

19. During the interview, SEELEY admitted to calling Avelo Airlines after drinking beers. After going back and forth with the representative about his flight credit and his inability to use it in a way he thought was fair, he told the representative he was going to book a flight to Texas and "go ballistic." SEELEY claimed he never said he would shoot people. He explained that the threat was a "what if situation," to make a point, and he had no intention of really traveling to Texas or harming anyone.

20. SEELEY told law enforcement that as soon as the call ended, he knew he was in the wrong. SEELEY denied owning a firearm. He stated he was just trying to make a statement.

21. During the interview, the Agent played the last two minutes of SEELEY's call with the representative so he could hear what he said. After listening to the recording, SEELEY was asked if he had access to explosives or knew how to



AF

make a bomb since he stated in the call: "I'll blow everyone the fucking away." SEELEY clarified that when he said that, he meant shooting.

22. SEELEY told law enforcement that he understood that the representative on the phone probably did not feel good about the conversation. However, SEELEY claimed he has never hurt anyone before and did not intend to act on his threats. SEELEY also stated it was "fucked up" what happened to the Healthcare CEO who was murdered outside his apartment.

23. During the interview, SEELEY mentioned his rent was also due on September 1, 2026, the same day his Avelo Airlines credit expires. At the time of the interview, he was short on cash. He also had to make payments on his storage unit and pay a few bills. SEELEY claimed the $183 did not matter for him because he previously lost $70,000 in a fire and on a different occasion, he lost $10,000 and was homeless.

## CONCLUSION

24. Based on my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that there is probable cause to believe that, on or about August 17, 2026, into August 18, 2026 in the Eastern District of North Carolina, SEELEY violated 18 U.S.C. § 875(c), by using interstate communications to make a threat to kidnap or injure.



AF

Respectfully submitted,

K Kucala

Kelly Kucala, Special Agent
Federal Bureau of Investigation

On this 20 day of ~~May 2025~~ August 2026, Kelly Kucala appeared before me via reliable means, was placed under oath, and attested to the contents of this Affidavit.

_______________________________

ROBERT B. JONES, JR.
United States Magistrate Judge